IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAMI GOODSON,

   Plaintiff,

     v.

BOSTON SCIENTIFIC
CORPORATION,

   Defendant.

CIVIL ACTION FILE
NO. 1:11-CV-3023-TWT

ORDER

This is a products liability action. It is before the Court on the Defendant's Motion to Dismiss [Doc. 3]. For the reasons set forth below, the Court GRANTS the Defendant's Motion to Dismiss [Doc. 3].

I. Background

On December 30, 2008, Tami Goodson underwent a hysterectomy and vaginal reconstruction surgery. During the procedure, doctors implanted a Pinnacle Pelvic Floor System ("Pinnacle") and Prefyx Pre-Pubic Sling ("Prefyx"). Both products are commonly referred to as vaginal mesh. In March 2009, Goodson's partner told her that his penis had been scratched during intercourse. Goodson visited her doctor, who trimmed portions of the vaginal mesh that was protruding through her vagina. On

July 19, 2009, Goodson underwent surgery for stress urinary incontinence and chronic pain.

On July 18, 2011, Goodson filed this Complaint against Boston Scientific Corp. ("Boston"), the manufacturer of Pinnacle and Prefyx. The Plaintiff asserts claims for negligence, strict liability, breach of express warranty, breach of implied warranty, fraudulent concealment, fraudulent misrepresentation, negligent infliction of emotional distress, attorneys' fees, and punitive damages. The Plaintiff served Boston on August 11, 2011. On September 15, 2011, the Defendant filed a Motion to Dismiss [Doc. 3]. The Defendant contends that Goodson's claims are barred by the statute of limitations, that she failed to properly serve the Defendant, and that the Complaint fails to state a plausible claim for relief.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citations and quotations omitted). In ruling on a motion to dismiss, the court

must accept factual allegations as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

III. Discussion

A. Statute of Limitations

First, the Defendant argues that Goodson's claims are barred by the statute of limitations. "State law concerning the applicable statute of limitations governs the outcome of this case because federal courts sitting in diversity must apply the controlling substantive law of the state." Johnson v. American Meter Co., 412 F. Supp. 2d 1260, 1262-1263 (N.D. Ga. 2004). "[A]n action to recover for personal injuries is, in essence, a personal injury action, and, regardless of whether it is based upon an alleged breach of an implied warranty or is based upon an alleged tort, the limitations statute governing actions for personal injuries is controlling." Adair v. Baker Bros., Inc., 185 Ga. App. 807, 808 (1988) (quoting 37 A.L.R.2d 704). In

Georgia, the statute of limitations for personal injury actions in two years. O.C.G.A. § 9-3-33.

"There are at least four points at which a tort cause of action may accrue: (1) When the defendant breaches his duty; (2) when the plaintiff suffers harm; (3) when the plaintiff becomes aware of his injury; and (4) when the plaintiff discovers the causal relationship between his harm and the defendant's misconduct." King v. Seitzingers, Inc., 160 Ga. App. 318, 319 (1981) (quoting Raymond v. Eli Lilly & Co., 117 N.H. 164, 168 (1977)). "A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." Id.[1] Further, "whether [the Plaintiff] should, through the exercise of reasonable diligence, have discovered the causal connection

---

[1]The Defendant contends that the "discovery rule" does not apply to the Plaintiff's claims. Indeed, the discovery rule traditionally applies to cases involving continuous injury. McAuley v. Wills, 251 Ga. 3 (1983). While the Pinnacle and Prefyx devices remained in Goodson's body, however, "she suffered prolonged and constant exposure to the Defendant's allegedly defective product." Carr v. Ethicon, Inc., No. 11-CV-2217, 2011 WL 4424457, at *3 (N.D. Ga. Sept. 20, 2011); see also In re Mentor Corp. ObTape Transobturator Sling Products Liability Litigation, 711 F. Supp. 2d 1348 (M.D. Ga. 2010) (applying discovery rule to suit arising from defective suburethral sling implant). Thus, the discovery rule applies the Goodson's claims.

between [her] illnesses and the alleged negligence of defendant is an issue for jury determination." Andel v. Getz Servs., Inc., 197 Ga. App. 653, 654 (1990).

In In re Mentor Corp. ObTape Transobturator Sling Products Liability Litigation, 711 F. Supp. 2d 1348 (M.D. Ga. 2010), the plaintiffs brought products liability claims against the seller of a suburethral sling implant. After the initial implantation, the plaintiffs had suffered vaginal discharge and other injuries. The plaintiffs, however, filed suit more than two years after first discovering their physical injuries. Nevertheless, the court found that the complaint was timely, noting that the plaintiffs had been unaware that a defect in the suburethral sling had caused their injuries. The discovery rule therefore tolled the statute of limitations until the plaintiffs reasonably should have determined that the sling implant was defective. In one instance, the court reasoned that "[the plaintiff's] doctor never told her there was a defect in the [sling implant]." Id. at 1380. Thus, the court held that "a reasonable fact finder could conclude that [the plaintiff] did not suspect that [the sling] might be defective until . . . [the plaintiff's doctor's] physician assistant told [the plaintiff] that there was a problem with the sling." Id.

Similarly, in Carr v. Ethicon, No. 11-CV-2217, 2011 WL 4424457 (N.D. Ga. Sept. 20, 2011), the plaintiff brought a products liability action after suffering injuries allegedly resulting from vaginal mesh implants. After being implanted, the plaintiff

underwent three surgeries to repair and trim portions of the mesh that had begun to protrude from the plaintiff's vagina. The plaintiff filed suit more than two years after the second surgery. The defendant argued that the two-year statute of limitations barred the plaintiff's claims. The court, however, held that the complaint was timely. Citing In re Mentor, the court reasoned that although the plaintiff manifested injuries more than two years before filing suit, "the Plaintiffs did not suspect that the Pinnacle Device was defective until after [the Plaintiff's] initial injuries occurred." Id. at *3.

Here, the Plaintiff first manifested injury in March 2009. In response to the Motion to Dismiss, the Plaintiff argues that she did not suspect that the Defendant's products were defective until after July 19, 2009. However, she has not presented any facts that would toll the statute of limitations after March 2009. It is her burden to show that there is at least a question of fact as to whether the "discovery rule" saves her case from the bar of the statute of limitations. She has not done so, and the Defendant's motion should be granted.

B.  Service of Process

Next, the Defendant argues that Goodson did not properly serve it. "[U]nder Georgia law, service of process shall be made by the person making service within five days of the receipt of summons and complaint." Johnson, 412 F. Supp. 2d at 1263 (citing O.C.G.A. § 9-11-4(c)). "Service of process later than five days but

within the statute of limitations does not, however, . . . trigger any adverse consequences, as the statute also provides that 'failure to make service within the five-day period will not invalidate a later service.'" Id. (quoting O.C.G.A. § 9-11-4(c)). "[W]here service of process is made after expiration of the statute of limitations for a complaint filed within the statute, this service will relate back to the filing of the complaint only if (1) plaintiff has perfected service within five days of the filing of the complaint or (2) plaintiff has otherwise diligently attempted to perfect service." Id. The Plaintiff has not shown that she diligently attempted to perfect service upon the Defendant.

C.   Failure to State a Claim

The Defendant contends that the Complaint fails to meet the pleading standards of Federal Rules of Civil Procedure 8 and 9. To survive a motion to dismiss, the Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The Complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. This standard requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

1. <u>Negligence</u>

"In Georgia, the essential elements of a cause of action for negligence are: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." <u>Vaughan v. Glymph</u>, 241 Ga. App. 346, 348 (1999). Further, "[a]n injury, without more, does not create the presumption of negligence." <u>Palacios v. Abercrombie</u>, 236 Ga. App. 54, 55 (1999).

Here, the Plaintiff alleges that Boston was "negligent in failing to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the Products." (Compl. ¶ 15.) The Plaintiff, however, offers no facts as to *how* the Pinnacle and Prefyx devices were designed, manufactured, marketed, labeled, packaged, or sold. Nor does the Complaint state how the Defendant acted negligently in any of those areas. Rather, the Plaintiff baldly states that the Defendants "were negligent." This legal conclusion cannot withstand a motion to dismiss. See <u>Albert v. Citimortgage, Inc.</u>, No. 10-CV-3238, 2011 WL 1085148, at *2 (N.D. Ga. March 21, 2011) (noting that legal conclusions should not be accepted as true for purposes of motion to dismiss). For this reason, the Plaintiff's negligence claims are dismissed.

## 2. Strict Liability

To establish strict liability, the Plaintiff must show that "the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." O.C.G.A. § 51-1-11(b)(1). "The existence of a defect is crucial, because a manufacturer is not an insurer against all risks of injury associated with its product." Giordano v. Ford Motor Corp., 165 Ga. App. 644, 645 (1983).

In Count II, the Plaintiff alleges a design defect. Specifically, Goodson asserts that "the [Defendant's] Products implanted in Plaintiff were not reasonably safe for their intended use and were defective as a matter of law." (Compl. ¶ 18.) Further, the Complaint states that "[a]s a direct and proximate result of the Products' aforementioned defects, Plaintiff was caused . . . severe personal injuries . . ." (Id. ¶ 19.) These allegations merely track the requirements of O.C.G.A. § 51-1-11(b)(1). The Complaint does not describe *how* the Pinnacle or Prefyx devices were defective. See Hammonds v. Boston Scientific, No. CIV-11-0663, 2011 WL 4978369, at *2 (W.D. Okla. Oct. 19, 2011) (dismissing strict liability claim and reasoning that "[n]oticeably absent from the amended complaint is any statement of how this specific Pinnacle device failed or otherwise caused injury to the plaintiff."). Such "a formulaic

recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. For this reason, the Plaintiff's strict liability design defect claim is dismissed.

In Count III, the Plaintiff asserts a claim for a manufacturing defect. The Complaint makes the identical allegation that "the [Defendant's] Products implanted in Plaintiff were not reasonably safe for their intended use and were defective as a matter of law." (Compl. ¶ 22.) As discussed above, such legal conclusions, without any factual support, cannot withstand a motion to dismiss. For this reason, the Plaintiff's strict liability manufacturing defect claim is dismissed.

Finally, in Count IV, Goodson asserts a strict liability claim for failure to warn. Again, the Plaintiff makes the same conclusory allegations found in Counts II and III. (See Compl. ¶¶ 26 & 27.) Importantly, the Plaintiff does not identify what warnings the Defendant did, or should have, provided. For this reason, the Plaintiff's strict liability claim for failure to warn is dismissed.

   3.  Express Warranty

In Count V, the Plaintiff asserts a claim for breach of express warranty. An express warranty may be created by:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain

creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

O.C.G.A. § 11-2-313. Here, the Complaint states that the "Defendant made assurances to the general public, hospitals, and health care professionals that the Products were safe and reasonably fit for their intended purposes." (Compl. ¶ 30.) The Plaintiff does not, however, identify any specific statements made by the Defendant. Nor does Goodson describe the content of those statements. See Hammonds, 2011 WL 4978369, at *2 (dismissing express warranty claim where amended complaint "fail[ed] to identify what warranties and misrepresentations were made."). Finally, under Georgia law, warranty claims may only be brought by those in privity with the Defendant or those "in the family or household of [the] buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the

warranty." O.C.G.A. § 11-2-318; see also Bryant v. Hoffmann-La Roche, Inc., 262 Ga. App. 401, 410-411 (2003) (dismissing express and implied warranty claims against defendant manufacturer where plaintiff did not purchase product from manufacturer). Goodson was not in privity with the Defendant. Nor does she fall into one of the categories set forth in O.C.G.A. § 11-2-318. For these reasons, the Plaintiff's breach of express warranty claim is dismissed.

### 4. Implied Warranty

In Count VI, the Plaintiff asserts a claim for breach of implied warranty. The Complaint states that the Defendant "impliedly warranted the Products were merchantable and fit for the ordinary purposes for which they were intended." (Compl. ¶ 37.) Again, this allegation is merely a legal conclusion. Further, as discussed above, Goodson was not in privity with the Defendant. See Bryant, 262 Ga. App. at 410-411 (dismissing implied warranty claim against manufacturer where plaintiff did not purchase product from manufacturer). For these reasons, the Plaintiff's breach of implied warranty claim is dismissed.

### 5. Fraudulent Concealment and Misrepresentation

In Count VII, the Plaintiff asserts a claim for fraudulent concealment. Specifically, Goodson claims that the Defendant failed to disclose that the Pinnacle and Prefyx devices were dangerous and were manufactured and designed defectively.

Allegations of fraud implicate the heightened pleading standards of Rule 9(b). Albert, 2011 WL 1085148, at *2. "A complaint satisfies Rule 9(b) if it sets forth precisely what statements or omissions were made in what documents or oral representations, who made the statements, the time and place of the statements, the content of the statements and manner in which they misled the plaintiff, and what benefit the defendant gained as a consequence of the fraud." Id. (quoting In re Theragenics Corp. Sec. Litig., 105 F. Supp. 2d 1342, 1347 (N.D. Ga. 2000)).

In Hammonds v. Boston Scientific, Inc., the plaintiff asserted claims for fraudulent concealment and misrepresentation. The complaint "allege[d] that [the defendant] made public and private statements it knew or should have known were false." Hammonds, 2011 WL 4978369, at *2. The court, however, held that the plaintiff's claims for fraudulent concealment and fraudulent misrepresentation did not meet the heightened pleading standards of Rule 9(b). The court reasoned that the plaintiff's "conclusory allegations fail[ed] to identify any particular representation." Id.

Here, as in Hammonds, the Complaint states that Boston "falsely and fraudulently represented to Plaintiff, the FDA, and the general public that the Products had been tested and were found to be safe and effective for their intended use." (Compl. ¶ 54.) Goodson does not, however, identify who made the alleged

statements, the contents of the statements, or the time and place that the misrepresentations were made. See Hammonds, 2011 WL 4978369, at *2; Albert, 2011 WL 1085148, at *2 (quoting In re Theragenics, 105 F. Supp. 2d at 137) (noting that Rule 9(b) requires plaintiff to state "precisely what statements or omissions were made in what documents or oral representations, who made the statements, the time and place of the statements, the content of the statements and manner in which they misled the plaintiff, and what benefit the defendant gained as a consequence of the fraud.").

Similarly, as to the Plaintiff's fraudulent concealment claim, Goodson asserts that the Defendant made fraudulent representations "to Plaintiff, the FDA, and the general public." (Compl. ¶ 46.) Thus, as in Hammonds, Goodson fails to specifically identify the alleged fraudulent statements. See Hammonds, 2011 WL 4978369, at *2 (dismissing fraudulent concealment claim where plaintiff failed to identify specific statements). For these reasons, the Plaintiff's fraudulent misrepresentation and fraudulent concealment claims are dismissed.

### 6. Negligent Infliction of Emotional Distress

In Count IX, the Plaintiff asserts a claim for negligent infliction of emotional distress. As discussed above, however, Goodson has not established a viable tort claim against the Defendant. See Reeves v. Edge, 225 Ga. App. 615, 619 (1997)

(dismissing negligent infliction of emotional distress claim because plaintiff did not establish a viable underlying tort claim). For this reason, the Plaintiff's negligent infliction of emotional distress claim is dismissed.

### 7. Punitive Damages and Attorneys' Fees

Finally, the Plaintiff asserts claims for punitive damages (Count X) and attorneys' fees (Count XI). As discussed above, however, the Plaintiff has not properly pled an underlying tort. Georgia's attorneys' fees statute, O.C.G.A. § 13-6-11, "does not create an independent cause of action but merely permits in certain limited circumstances the recovery of the expenses of litigation incurred as an additional element of damages." Lamb v. Salvage Disposal Co. of Ga., 244 Ga. App. 193, 196 (2000). "Similarly, punitive damages are not recoverable unless general damages have been awarded." Id. Thus, Goodson's claims for punitive damages (Count X) and attorneys' fees (Count XI) are dismissed.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Defendant's Motion to Dismiss [Doc. 3].

SO ORDERED, this 29 day of December, 2011.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge